## Case No. 8,231.

### In re LELAND.

[7 Ben. 436.] [1]

District Court, S. D. New York. Sept., 1874. [2]

BANKRUPTCY ACT OF JUNE 22D, 1874—SECTION 39—REPEAL OF STATUTE — RETROACTIVE STATUTE—SURRENDER OF PREFERENCE—ACTUAL FRAUD.

1. A creditor had filed a proof of debt in these proceedings, as a proof of debt with security, the security being mortgage bonds executed by the debtors. The mortgage was subsequently decided by the court to have been given in fraud of the bankruptcy act [of 1867 (14 Stat. 517)], and to be void. The creditor then applied for leave to file a new proof of debt, as a proof of debt without security. The court refused the application, deciding, that, after the mortgage had been set aside, and the assignee had thus recovered back the property, the creditor could not surrender his preference and prove his debt. A re-examination of the proof of debt being had, the assignee claimed that the creditor should not be allowed to prove the claim, and that the proof of debt should be expunged; while the creditor claimed, that, whatever might be the case under the 39th section of the bankruptcy act, as it stood prior to the passage of the act of June 22, 1874 [18 Stat. 178], the debt was, since the passage of that act, provable, and the proof should not be expunged. The case was a case of involuntary bankruptcy, and an adjudication had been made prior to December 1st, 1873. Held, that the act of June 22d, 1874, was not retroactive, except where expressly made so.

[Followed in Re Leland, Case No. 8,235.]

2. The new 39th section, passed in the act of June 22d, 1874, was not retroactive as to cases which, though commenced since December 1st, 1873, had passed to an adjudication of bankruptcy prior to the 22d of June, 1874.

3. The old 39th section, not being repealed directly, and not being repealed because of inconsistency, was in force in respect to the present case, and the proof of debt must be expunged.

4. As to the meaning of the words "cases of actual fraud," in the new 39th section, quaere.

[In the matter of the bankruptcy of Simeon, Warren and Charles Leland, composing the firm of Simeon, Leland & Co. Warren and Charles Leland composed a second firm, called Leland Bros., who owned and operated a hotel at Saratoga Springs. After the bankrupt proceedings were instituted against Simeon Leland & Co. proceedings were instituted in the Western district of New York against Leland Bros., but the court then refused to take cognizance of the case, because the bankruptcy of Leland Bros. could be and was being adjudicated in this court in the proceedings in this case. Case No. 8,228. Leland Bros. issued certain bonds secured by real-estate mortgage. These bonds are construed in Case No. 8,229. Leland Bros. also gave chattel mortgages upon part of the hotel fixtures. These are declared void for want of proper recordation in Case No. 8,234. A decree was entered November, 1873, declaring the mortgages upon the real estate void. Those holding the bonds

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 8,235.]

secured by these mortgages were refused the right to prove their debts as unsecured. Case No. 8,230. The case is now heard upon new proofs taken upon re-examination as to one of these creditors.]

In this case, a proof of debt having been filed by A. T. Stewart & Co., March 1st, 1872, as a debt having the security of seventeen mortgage bonds, and the bonds and mortgage having been afterwards, on the 1st of November, 1873, held to be void, an application was made by them for leave to file a new proof of debt, as a debt without security. This application was denied. The decision on this application will be found [Case No. 8,230]. After this decision a re-examination of the debt of A. T. Stewart & Co. was ordered.

On the hearing, on this re-examination of the proof of claim, A. T. Stewart & Co. offered in evidence certain testimony given on the previous reference, and produced said seventeen bonds, and offered to surrender them to the assignee, withdrawing all claim under the same. They also introduced evidence that, on the 20th of January, 1874, which was the day after said bonds were so produced and offered to be surrendered, they delivered the said seventeen bonds to the assignee, and stated to him that they withdrew all claim under them; that the assignee retained the bonds; and that on the same day they delivered to the assignee, and requested him to file and transmit to the register, a new proof of debt, without security, made by them. In reply to this evidence, the assignee, on his own behalf, testified, that the delivery of the seventeen bonds to him was after the commencement of the re-examination of the claim, and long after the said order of November 1st, 1873, adjudging the bonds to be invalid, was made; that, when the bonds were so offered to him, he told the person offering them, that, as the bonds had been adjudged to be void in the hands of A. T. Stewart & Co., he supposed he was the proper person to have the custody of them, and that he accepted them because they belonged to him and unconditionally; that he did not expressly, nor, so far as he knew, impliedly, in any manner waive any of his rights under said order of November 1st, 1873, or the order for the re-examination of the claim; that he expressly stated to the person who brought the bonds, that, if A. T. Stewart & Co. should file any new proof of debt, he should move to strike it out; and that he had no recollection that a new proof of debt was then offered to him. On the part of the assignee, there was also put in evidence a copy of a petition by A. T. Stewart & Co. to this court, dated January 20th, 1874, praying leave to withdraw the proof of debt filed March 1st, 1872, and to file a new proof of debt, and the answer of the assignee to such petition, and the order of this court, made May 9th, 1874, denying the prayer of the petition. This is the application above referred to as having been denied.

Objection having been made to the making of any order by the register in the premises, the parties, in pursuance of the provisions of general order No. 34, formed an issue, to be certified into court for determination. The issue was stated in these words: "The assignee alleges that the bankrupts, Charles Leland and Warren Leland, being insolvent, within four months before the filing of the petition in bankruptcy against them, with a view to give a preference to the said A. T. Stewart & Co., as creditors, in respect to the indebtedness mentioned in their proof of debt, made a conveyance of a part of their property, by way of mortgage, to Edward B. Wesley and D. Randolph Martin, to secure seventeen certain bonds of $1,000 each, which bonds the said bankrupts delivered to the said A. T. Stewart & Co., as security for such indebtedness, the said Edward B. Wesley and D. Randolph Martin, and also the said A. T. Stewart & Co., having reasonable cause to believe that said bankrupts were insolvent, and that said conveyance was made in fraud of the provisions of the bankruptcy act; that the said creditors should not be allowed to prove their debt in bankruptcy; and that the proof now under re-examination should be expunged. The said A. T. Stewart & Co. deny each and every of the above allegations of the assignee, and further allege, that, prior hereto, said A. T. Stewart & Co. have surrendered to said assignee, and said assignee has accepted from them, said seventeen bonds, and that, by surrender and acceptance, said A. T. Stewart & Co. became entitled to retain their proof of debt, even though the original acceptance of the said bonds had constituted an unlawful preference; and said A. T. Stewart & Co., further allege, that there is no authority, under the bankruptcy act, for expunging the proof of debt made by them; and they further allege, that there has been no recovery, by the assignee, of the property alleged by him to have been transferred to them by the bankrupts in violation of the bankruptcy act, and that, for that reason, they are not debarred from proving their debt against the bankrupts. The said John H. Platt, as assignee, &c., in reply to the answer of A. T. Stewart & Co., denies each and every allegation in said answer contained." The register certified to the court the claim, the order for its re-examination, the proceedings on such re-examination, and the issue thereon.

D. Campbell, for A. T. Stewart & Co.
T. M. North, for assignee.

BLATCHFORD, District Judge. It is contended, for A. T. Stewart & Co., that, since the passage of the amendatory bankruptcy act of June 22d, 1874, there is no authority, under the act, to expunge the proof of debt of A. T. Stewart & Co.; that, whatever authority for that purpose there may have been under the 39th section, as it stood before the act of June 22d, 1874, was passed, the old 39th section was absolutely repealed by the

act of June 22d, 1874, without any saving clause as to pending proceedings; that the new 39th section does not authorize the court to strike out the proof of debt. unless actual fraud on the part of the creditor is proved; and that there is no proof of actual fraud in this case, and no such question is certified to the court.

There is not, in the act of 1874, any direct repeal of the 39th section of the act of 1867. The 12th section of the act of 1874 enacts, that section 39 of the act of 1867 "be amended so as to read as follows:" What follows is a new 39th section. The 21st section of the act of 1874 does not specifically repeal any part of the act of 1867, but enacts, "that all acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby, repealed." The language of the old 39th section, applicable to the present case, was this: "If such person shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred contrary to this act, provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, and that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy." The language of the new 39th section is this: "If such person shall be adjudged a bankrupt, the assignee may recover back the money or property so paid, conveyed, sold, assigned or transferred contrary to this act, provided, that the person receiving such payment or conveyance had reasonable cause to believe that the debtor was insolvent and knew that a fraud on this act was intended, and such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt." The difference in language in the two provisions would indicate an intended difference in meaning. But it may be more difficult to say what is the meaning of the words "in cases of actual fraud on his part," in their context. Do they mean anything more than the antecedent words—reasonable cause to believe the debtor's insolvency, and knowledge that a fraud on the act was intended? Do they mean actual fraud on the debtor? A creditor, in obtaining security for, or payment of, his debt from his debtor, rarely commits an actual fraud on his debtor. Do they mean actual fraud on other creditors? Obtaining a preferential payment of a debt may be a fraud on a statute. but it is difficult to conceive of its being an actual fraud on either the debtor or on other creditors. What scope is there for the operation of the provision, unless it be held to mean, that, if the person who received the payment or conveyance was a creditor, and had reasonable cause to believe that the debtor was insolvent, and knew that a fraud on the act was intended, that shall be regarded as a case of actual fraud on the act on the part of such

creditor, because, knowing that a fraud on the act was intended, he is to be regarded as a participant in the commission of the fraud on the act, and is not to be allowed to prove for more than a moiety of his debt? So, also, while there may be recognized an intention, in the new 39th section, to draw a distinction between knowledge and reasonable cause to believe, it may be difficult to define the line of distinction, where the one passes into the other. But, in the view I take of the effect of the act of 1874, it is not necessary to discuss the meaning of the new 39th section, in the particular just referred to. ·

At the beginning of the act of 1874, it is enacted, that the act of 1867 be "amended and supplemented as follows:" Then follow 21 sections. The 12th section is this: "That section thirty-nine of said act of March second, eighteen hundred and sixty-seven, be amended so as to read as follows:" Then follows an entire section (39) for the act of 1867, in substitution for the former section 39 of said act. The new section 39 is too long to be quoted here, but an analysis of its provisions is necessary, in order to determine the scope of its operation, and whether its provisions apply to the matter in hand and supersede the provisions of the old section 39 in respect to such matter, or whether the provisions of the old section 39 still remain in force, unrepealed, in respect to such matter. It is to be borne in mind always, however, that section 39 is so amended only from the time the new act was passed, June 22d, 1874, and is to read in the new form only from such date, unless the contrary is expressed. In other words, the new section operates only from the 22d of June, 1874, and is not retroactive, except where expressly made so.

In the new 39th section we have, in the first place, provisions as to what persons may be adjudged involuntary bankrupts, and for what causes, and in what mode, and within what time the petition must be brought, and by whom. Then, next, the 39th section, speaking of itself as enacted June 22d, 1874, and not before, says, that "the provisions of this section," that is, all its provisions, "shall apply to all cases of compulsory or involuntary bankruptcy commenced since the first day of December, eighteen hundred and seventy-three, as well as to those commenced hereafter." The word "hereafter" must mean, after the passage of the act of June 22d, 1874. It is retroactive to the 1st of December, 1873, as to cases commenced since that day. But it is not thus retroactive, as to cases which, though commenced since the 1st of December, 1873, had, prior to the 22d of June, 1874, passed to an adjudication of bankruptcy. This is the view uniformly held of its effect, and correctly. The point arose as to cases commenced after the 1st of December, 1873, and in which there had been adjudications before the passage of the act of 1874, but where the petitions did not con-

form, as to the number and amount of the petitioning creditors, to the requirements of the new 39th section; and it has been held, in all the decisions, that the provisions of the new 39th section as to the number and amount of petitioning creditors have no application to cases in which there were adjudications of bankruptcy before the passage of the act of 1874. In re Raffauf [Case No. 11,525], and In re Angell [Id. 386]; In re Rosenthall [Id. 12,062]; In re Pickering [Id. 11,120]; In re Obear [Id. 10,395]; and In re Thomas [Id. 13,886]; In re Comstock [Id. 3,077]. But, all the provisions of the new 39th section are made applicable to cases of involuntary bankruptcy commenced since December 1st, 1873, and not merely certain provisions of it. Then, again, the enactment that the provisions of the new 39th section shall apply to all cases of involuntary bankruptcy commenced since December 1st, 1873, implies that its provisions are not to apply to cases of involuntary bankruptcy commenced on or before that day, as the present case was. The new 39th section then goes on to prescribe the mode of procedure to ascertain whether creditors sufficient in number and amount have joined in the petition. It then proceeds to enact that, "if such person shall be adjudged a bankrupt" the assignee may recover back property transferred contrary to the act, provided certain facts exist in regard to the person receiving the conveyance. and that "such person," the person receiving the conveyance, "if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt," and that "this limitation on the proof of debt shall apply to cases of voluntary as well as involuntary bankruptcy." Now, most certainly, the recovery back of the property transferred contrary to the act is a condition precedent to the limitation on the proof of debt, and such recovery back of such property is to take place only if the person who has transferred it "shall be adjudged a bankrupt." But the new 39th section is speaking as of the 22d of June, 1874, and of recoveries back of property and limitations of proofs of debt only in cases where the persons transferring the property "shall be" adjudged bankrupts after the passage of the act of 1874. In this view, there is nothing in the old 39th section, as to the matter in hand, that is inconsistent with anything in the new 39th section, or in any other part of the act of 1874. Hence, the old 39th section, not being directly repealed, and not being repealed because of inconsistency, is in force in respect to the present case.

As to the surrender, even if, after a recovery back of the property by the assignee, he could accept such a surrender, the proof is here that he did not.

An order will be entered determining in favor of the assignee the issue certified, and declaring that A. T. Stewart & Co. are not to be allowed to prove in bankruptcy the debt in question, and expunging the proof of debt filed March 1st, 1872.

[NOTE. An appeal upon the points involved in this case was taken to the circuit court, which affirmed the decision of this court. Case No. 8,235. The bankrupts' discharge is considered in Case No. 8,232, the right of another creditor to prove his claim in Case No. 8,233, and the right of the sheriff for fees in civil cases in Case No. 11,221. The action of the assignee in bringing suits against the fraudulently preferred creditors is sustained in Case No. 11,220.]